UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

GABRIEL SMUD,
MARCOS VIEIRA, and
BRUNO VIEIRA

Case No. 8:10-Cr-00105-T-23AEP

18 U.S.C. § 371;
8 U.S.C. § 1324 (a)(1)(A)(i);
8 U.S.C. § 1324 (a)(1)(A)(ii);
8 U.S.C. § 1324 (a)(1)(A)(iii);
18 U.S.C. § 1956(a)(1)(B)(i);
18 U.S.C. §1956(a)(1)(A)(i);
18 U.S.C. § 982(a)(1) Forfeiture

**SUPERSEDING INDICTMENT**

The Grand Jury Charges:

**COUNT ONE**

**A. The Conspiracy**

1.   Beginning on a date unknown, but no later than in or about 2004, through in or about 2006, in the Middle District of Florida and elsewhere,

GABRIEL SMUD,
MARCOS VIEIRA, and
BRUNO VIEIRA,

the defendant herein, did knowingly and willfully combine, conspire, confederate, and agree with other persons, both known and unknown to the Grand Jury, to commit offenses against the United States, that is,

a)   To knowingly bring and attempt to bring persons, known to be aliens, to the United States at places other than a designated port of entry and places other than legally designated, in violation of Title 8, United States Code, Section(s) 1324(a)(1)(A)(i);

b)   To transport and attempt to transport illegal aliens for commercial advantage and private financial gain, knowingly and in reckless disregard of the fact that said aliens had come to, entered, and remained in the United States in violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii);

c)  To conceal, harbor, and shield from detection and to attempt to do so in any place, building, and means of transportation, illegal aliens knowingly and in reckless disregard of the fact that said aliens had come to, entered, and remained in the United States in violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii);

d)  To knowingly conduct or attempt to conduct financial transactions affecting interstate commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which were, in fact, the proceeds of specified unlawful activity, that is, the proceeds of Knowingly Bringing Aliens into the United States at Places other than Designated Ports of Entry (in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i)), knowing that the transactions were conducted with the intent to promote the carrying on of specified unlawful activity, contrary to the provisions of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

e)  to knowingly conduct or attempt to conduct financial transactions affecting interstate commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which were, in fact, the proceeds of specified unlawful activity, that is, the proceeds of Knowingly Bringing Aliens into the United States at Places other than Designated Ports of Entry (in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i)), knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, contrary to the provisions of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### B. Manner and Means

2.  The manner and means utilized to accomplish the objects of the conspiracy included, among others, the following:

3.  It was a part of the conspiracy that the conspirators would and did offer their services to smuggle aliens into the United States through the Mexican border.

4.  It was further a part of the conspiracy that the conspirators would and did charge approximately $8,000 for each individual successfully smuggled into the United States.

5. It was further a part of the conspiracy that the conspirators would and did direct the aliens to enter Mexico prior to being smuggled into the United States.

6. It was further a part of the conspiracy that the conspirators would and did collect part of the fees when the aliens arrived in Mexico and the remaining balance when the aliens reached the United States.

7. It was further a part of the conspiracy that the conspirators would and did provide a place for the aliens to stay within Mexico in close proximity to the United States border until they were ready to smuggle the aliens across the border

8. It was further a part of the conspiracy that the conspirators would and did use smugglers known as "coyotes" from Mexico to smuggle the aliens across the border.

9. It was further a part of the conspiracy that the conspirators would and did provide a place to conceal, harbor, and shield the aliens from detection by immigration authorities in the United States.

10. It was further a part of the conspiracy that the conspirators would not allow the aliens to leave the place they were staying in the United States until the balance of their fees for smuggling them into the United States was paid.

11. It was further a part of the conspiracy that the conspirators would and did transport and aid in the transportation of aliens to various destinations within the United States, including Tampa, Florida.

12. It was further a part of the conspiracy that the conspirators would and did open multiple bank accounts and safety deposit boxes in financial institutions in Tampa, Florida and elsewhere.

13. It was further a part of the conspiracy that the conspirators would and did deposit and caused to be deposited proceeds of illegal alien smuggling activities into the bank accounts at the financial institutions in Tampa, Florida and elsewhere.

14. It was further a part of the conspiracy that the conspirators would and did conduct financial transactions involving the proceeds of illegal alien smuggling activities for the purpose of concealing and disguising the nature, the location, the source, the ownership, and the control of the proceeds of illegal alien smuggling activities.

15. It was further a part of the conspiracy that the conspirators would and did receive payments in exchange for their assistance in conducting financial transactions involving the proceeds of illegal alien smuggling activities.

16. It was further a part of the conspiracy that the conspirators would and did withdraw moneys from the bank accounts at the financial institutions in Tampa, Florida.

17. It was further a part of the conspiracy that the conspirators would and did use some the withdrawn moneys from the bank accounts at the financial institutions in Tampa, Florida, to promote the carrying on of the illegal alien smuggling activities by wiring funds to Mexico.

18. It was further a part of the conspiracy that the conspirators would and did make false statements and otherwise conducted these activities in a manner calculated to conceal and cover up the existence and activities of the conspiracy.

### C. Overt Acts

19. In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere:

      a.    On or about December 6, 2004, GABRIEL SMUD, opened and caused to be opened an account in his own name at Bank of America in Tampa Florida.

      b.    On or about December 9, 2004, Defendant GABRIEL SMUD, received an out of state deposit in the approximate amount of $4,060 into his Bank of America savings account.

      c.    On or about December 9, 2004, Defendant GABRIEL SMUD withdrew approximately $4,060 from his Bank of America savings account and transferred this amount to his Bank of America checking account.

      d.    On or about December 10, 2004, Defendant GABRIEL SMUD wrote check #102 in the amount of $2,960 payable to himself and check #107 in the amount of $1,300, payable to himself, both from his Bank of America checking account in Tampa FL.

      e.    On or about December 10, 2004, Defendant GABRIEL SMUD wired and caused to be wired $2,900 to Rogelio Rosales in Mexico via Western Union.

      f.    On or about December 13, 2004, Defendant GABRIEL SMUD received an out of State deposit in the amount of $4,000 into his Bank of America Savings account.

      g.    On or about December 13, 2004, Defendant GABRIEL SMUD withdrew $4,000 from his Bank of America savings account and transferred this amount to his Bank of America checking account.

      h.    On or about December 13, 2004, Defendant GABRIEL SMUD wrote check #109 from Bank of America checking account in the amount of $4,200 payable to himself.

      i.    On or about December 13, 2004, Defendant GABRIEL SMUD wired and caused to be wired $4,200 via Western Union to Mexico.

      j.    On or about December 17, 2004, Defendant GABRIEL SMUD received an out of state deposit in the amount of $2,300 into his Bank of America savings account.

      k.    On or about December 17, 2004, Defendant GABRIEL SMUD received an out of State deposit in the amount of $2,000 into his Bank of America savings account.

      l.    On or about December 17, 2004, Defendant GABRIEL SMUD withdrew $4,300 from his Bank of America savings account and transferred this amount to his Bank of America checking account.

      m.    On or about December 17, 2004, Defendant GABRIEL SMUD wrote check #112 from Bank of America checking account in the amount of $2,000 payable to himself.

      n.    On or about December 17, 2004, Defendant GABRIEL SMUD wrote check #113 from his Bank of America checking account in the amount of $2,200 payable to himself.

      o.    On or about December 17, 2004, Defendant GABRIEL SMUD wired and caused to be wired $2,200 via Western Union to Mexico.

p.  On or about December 17, 2004, Defendant GABRIEL SMUD wired and caused to be wired $2,200 via Western Union to Mexico.

q.  On or about January 13, 2005, Defendant GABRIEL SMUD, opened and caused to be opened account in his own name at Bank of America in Tampa Florida.

r.  On or about 18 January 2005, Defendant GABRIEL SMUD received an out of state deposit in the amount of $4,800 into his Bank of America checking account.

s.  On or about January 18, 2005, Defendant GABRIEL SMUD transferred $2,800 from one of his Bank of America checking accounts and transferred this amount to another Bank of America checking account.

t.  On or about January 18, 2005, Defendant GABRIEL SMUD wired and caused to be wired $5,768.00 via Western Union with the payee being Defendant GABRIEL SMUD, FL

u.  On or about March 24, 2005, BRUNO VIEIRA, opened and caused to be opened an account in his own name at Bank of America in Tampa Florida.

v.  On or about March 28, 2005, Defendant BRUNO VIEIRA, received an out of State deposit into his Bank of America account in the amount of $4,400.

w.  On or about March 29, 2005, Defendant BRUNO VIEIRA made a cash withdrawal in the amount of $4400 from his Bank of America account located in Tampa Florida.

x.  On or about 29 March 2005, Defendant BRUNO VIEIRA received an out of State deposit into his Bank of America account located in Tampa, Florida, in the amount of $5,500.

7

y. On or about March 31, 2005, Defendant BRUNO VIEIRA made a cash withdrawal in the amount of $5,250 from his Bank of America account located in Tampa Florida.

z. On or about March 25, 2005, MARCOS VIEIRA, opened and caused to be opened an account in his own name at Bank of America Account in Tampa Florida.

A. On or about March 28, 2005, Defendant MARCOS VIEIRA, received an out of state deposit into his Bank of America account located in Tampa, Florida in the amount of $1,980.

B. On or about March 28, 2005, Defendant MARCOS VIEIRA, received an out of State deposit into his Bank of America account located in Tampa, Florida in the amount of $480.

C. On or about March 29, 2005, Defendant MARCOS VIEIRA made a cash withdrawal in the amount of $2,100 from his Bank of America account located in Tampa, Florida.

D. On or about April 11, 2005, Defendant MARCOS VIEIRA received a deposit into his Bank of America account located in Tampa, Florida, in the amount of $1000.

E. On or about April 12, 2005, Defendant MARCOS VIEIRA made a cash withdrawal in the amount of $900 from his Bank of America located in Tampa, Florida.

F. On or about April 14, 2005, Defendant MARCOS VIEIRA received a deposit into his Bank of America account located in Tampa, Florida, in the amount of $3,000.

G. On or about April 15, 2005, Defendant MARCOS VIEIRA made a cash withdrawal in the amount of $2,900 from his Bank of America account located in Tampa, Florida.

H. On or about May 12, 2005, Defendant MARCOS VIEIRA received a deposit into his Bank of America account located in Tampa, Florida, in the amount of $4,900.

I. On or about May 12, 2005, Defendant MARCOS VIEIRA received a deposit into his Bank of America account located in Tampa, Florida, in the amount of $3,500.

J. On or about May 12, 2005, Defendant MARCOS VIEIRA made a cash withdrawal in the amount of $1,000 from his Bank of America account located in Tampa, Florida.

K. On or about May 12, 2005, Defendant MARCOS VIEIRA made a cash withdrawal in the amount of $2,200 from his Bank of America account located in Tampa, Florida.

L. On or about May 13, 2005, Defendant MARCOS VIEIRA made a cash withdrawal in the amount of $4,800.00 from his Bank of America account located in Tampa, Florida.

M. On or about August 9, 2005, Defendant MARCOS VIEIRA received a deposit into his Bank of America account located in Tampa, Florida, in the amount of $4,500.

N.   On or about August 10, 2005, Defendant MARCOS VIEIRA made a cash withdrawal in the amount of $4,400 from his Bank of America account located in Tampa Florida.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURES**

The allegations contained in Count One of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(6).

1.   From their engagement in the conspiracy to violate Title 8, United States Code, Section 1324 alleged in Count One of this Superseding Information, in violation of Title 18, United States Code, Section 371, the defendants,

> GABRIEL SMUD,
> MARCOS VIEIRA, and
> BRUNO VIEIRA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(6) as well as Title 8, United States Code, Section 1324(b)(1), and Title 28, United States Code, Section 2461(c):

(a)   any and all right, title, and interest they may have in any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense of which the defendants are convicted; and

(b)   any property real or personal (I) that constitutes, or is derived from or is traceable to gross proceeds obtained directly or indirectly from the commission of the offense of which the defendant is convicted; or (ii) that is used to facilitate, or is intended to be used to facilitate, the commission of which the defendant is convicted.

2.  If any of the property described above, as a result of any act or omission of the defendants:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the Court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL,

*Kim C. Godbee*
Foreperson

A. BRIAN ALBRITTON
United States Attorney

By: *[signature]*
EDUARDO E. TORO-FONT
Assistant United States Attorney

*[signature]*
JAY L. HOFFER
Assistant United States Attorney
Deputy Chief, General Crimes

No. 8:10-Cr-00105-T-23AEP

# UNITED STATES DISTRICT COURT

Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

GABRIEL SMUD,
MARCOS VIEIRA,
and
BRUNO VIEIRA,

## SUPERSEDING INDICTMENT

Violations:

Title 18, United States Code, Section 18 U.S.C. § 371

A true bill,

*Kim C. Hadley*

Foreperson

Filed in open court this 12th day
of May, A.D. 2010.

_____
Clerk

Bail $ _____